[Civ. No. 440.   Third Appellate District.—April 17, 1908.]

AMELIE AUGUSTE MATHILDE BECKER, Executrix of CHARLES H. BECKER, Deceased, Petitioner, v. A. B. NYE, Controller of State of California, Respondent.

ESTATES OF DECEASED PERSONS—FINAL ACCOUNT—INHERITANCE TAX.— The payment of the amount of the inheritance tax due from the estate of a deceased person should properly appear in the final account of administration of the estate. The receipt for the payment of such tax, countersigned by the controller of state, should be produced at the time of the settlement of such final account; and the settlement and approval thereof, without such receipt, is premature.

ID.—ORDER OF PAYMENT BEFORE DISTRIBUTION—EXEMPTIONS—SETTLE-MENT OF TAX BY COURT.—By the provisions of section 16 of the inheritance tax act of 1905, the superior court is given jurisdiction to hear and determine all questions in relation to such tax; and where, after settlement of the final account and before distribution of the estate, it determined the exemptions existing under such law and the amount of the tax payable, and ordered it be paid before distribution, its action is conclusive, subject only to be reviewed upon appeal.

ID.—ORDER APPEALABLE BY STATE.—The state, as an interested party, has the right to appeal from the order fixing the collateral inheritance tax.

ID.—SUGGESTION AS TO APPRAISEMENT.—Though the collateral inheritance tax requires an appraisement only in certain specified cases, it is suggested that it would be the better and more equitable course generally for the court to appoint appraisers and serve notices upon all interested parties, including the state, thus giving an opportunity for hearing to all parties before the tax is fixed.

ID.—MANDAMUS TO CONTROLLER.—Where the superior court has fixed the tax, the controller has no revisory power over its action, and cannot collaterally assail it; and where he refuses to give any receipt for the amount of the tax fixed by the court, he will be compelled by *mandamus* to receipt for so much money on account of the inheritance tax in the matter of the estate; so as not to prejudice the right of the state to appeal from the order fixing it, for the determination of all questions arising upon the record of the estate in relation thereto.

PETITION for writ of mandate to the controller of state, to compel receipt for the amount of an inheritance tax.

The facts are stated in the opinion of the court.

B. F. Driver, and Wm. M. Sims, for Petitioner.

U. S. Webb, Attorney General, and Malcolm C. Glenn, for Respondent.

CHIPMAN, P. J.—Petition for *writ of mandate* to compel defendant to countersign receipt for inheritance tax.

The facts appearing by the petition are as follows: Charles H. Becker, plaintiff's testate, died in April, 1906, naming plaintiff as executrix of his will; all his property was community property, and plaintiff was named as sole devisee; she was duly appointed, and is now, the acting executrix of said will; the final account of the executrix was filed on August 13, 1907, and was settled and allowed on September 10, 1907, and "the total amount of said estate which came into the hand of said executrix as per said final account is the sum of $63,402.74," and on August 13, 1907, she filed a petition for distribution of the estate. This petition came on to be heard on October 7, 1907, and on that day the court made and entered its order reciting, among other things, that in her said petition for distribution the executrix "asked the court to fix the amount of inheritance tax due from those entitled to distribution of said estate," and that the amount of said estate coming into the hands of the executrix was as above stated. The court, at the hearing and by its order, made on October 7, 1907, fixed the amount of the tax, but refused to distribute the estate until the executrix had presented her receipt for the tax duly countersigned by the controller. It further appeared from this order that the amount of $63,402.74 came into the hands of the executrix, as shown by her final account, and that before the settlement and allowance of said final account, the sum of $3,360 was allowed the widow for support and maintenance; that the item of real property in said account (describing the land) "valued in said account and the inventory and appraisement at the sum of $19,200, together with the improvements thereon, valued in said account and in said appraisement at the sum of $3,500, was set aside to her as a probate homestead and excluded from further administration; that among the items in said

account the item of $1,376.04 was for grain planted, raised and harvested on the real property of said estate after the death of decedent''; that the costs of administration, including attorney's fees, also the debts of decedent paid by said executrix, including funeral expenses of deceased and expenses of last illness, amounted to the sum of $2,133.80. After reciting the foregoing facts, the court adjudged that the real property set aside as a homestead, with its improvements, amounting to $22,700; the family allowance of $3,360; the costs of administration, etc., $2,133.80; the grain planted and harvested, $1,376.04, and the exemption of $10,000 allowed by the inheritance tax law, making in all $39,569.84, should be and are exempt from the payment of inheritance tax, leaving the sum of $23,832.90 subject thereto, as follows:

$15,000.00 at one per cent.........................$150.00
  8,832.90 at one and one-half per cent.............. 132.50

Total .......................................$282.50

It was further ordered that the said Amelie, the person entitled to have the residue of said estate distributed to her, pay to the county treasurer of Solano county the said sum of $282.50, as the inheritance tax, and that the hearing of the petition for distribution be continued to the fourteenth day of October, 1907. It further appears that said executrix, in accordance with the terms of said order, on October 7, 1907, paid to the county treasurer of said county the said sum, and he accepted the same as the amount of inheritance tax due to the state from said legatee, and issued to her, as executrix of said estate, a receipt therefor in duplicate, as required by law; that thereafter, on October 12, 1907, the said executrix presented said receipt to said controller, with the request that he countersign the same and place the seal of his office thereon, but said controller refused, and still refuses, to comply with said request.

The plaintiff contends: First—That the superior court having adjudged the question as to the amount of the inheritance tax, its judgment is conclusive upon all persons, including the state controller, and that the controller has no power to question the action of the court, but must sign the receipt of the county treasurer when presented to him, his duty being merely ministerial;

Second—That the grain planted and harvested after the death of the decedent, the family allowance, the expenses of administration, the probate homestead set aside to the widow and the $10,000 exempted by the statute must be excluded from the total value of the property of decedent coming into the possession of the executrix, in computing the tax thereon.

It appeared that the court did not fix the amount of the tax upon any appraisement of the value of the estate as provided for in the inheritance tax act of 1905 (Stats. 1905, p. 341), nor was it fixed prior to or at the time of settling and allowing the final account, but it was determined some time later, when the petition for distribution was noticed for hearing, and then only upon the showing made in the previously settled final account and apparently upon values as shown in the inventory and appraisement of the estate made under the general provisions of the probate law.

Section 11 of the act of 1905 provides: ''. . . An executor, administrator, or trustee shall not be entitled to credits in his account nor be discharged from liability for such tax, nor shall said estate be distributed unless he shall produce a receipt so sealed and countersigned by the controller, or a copy thereof, certified by him, and file the same with the court.''

Section 1669 of the Code of Civil Procedure, as amended in 1905 (Stats. 1905, p. 83), provides: ''Before any decree of distribution of an estate is made, the court must be satisfied, . . . that all state, county and municipal taxes . . . and any inheritance tax which is due and payable, have been fully paid.''

Before distribution can be had the tax must be paid, and until that is done the estate is not in a condition to be closed. (*Estate of Lander*, 6 Cal. App. 744, [93 Pac. 202].) The final account must be rendered, settled and allowed before final distribution, and we do not see how such an account can be rendered and settled until after the amount of the tax is finally determined so that its payment can be made to appear in the final account. And at the time the account is settled, the receipt for such payment should show that it has been countersigned by the controller. A settlement and approval of the final account without such action by the controller would, in our opinion, be premature.

Section 5 of the inheritance tax law of 1905 provides for the ascertainment of the taxable value of life estates and estates determinable upon future events, by an appraiser to be appointed by the court. As to all other property or interests, no provision is made to determine the value of the estate, except where it is uncertain, in which case an appraiser is to be appointed by the court to determine such value. (Sec. 14.) Section 11 of the act of 1893 (Stats. 1893, p. 196) seems to have required appraisement in all cases. Why this change in the statute is not apparent. The practice throughout the state has not been uniform—some judges taking the inventory and appraisement as the basis, while others cause an appraisement to be made under the inheritance tax law, and still others resort to both methods. It would seem to be the better and more equitable course to appoint appraisers, for by that means all interested parties, including the state, are served with notice, and are given opportunity to be heard in the important matter of fixing a basis for the tax. But however this may be, section 16 of the act provides that the superior court "shall have jurisdiction to hear and determine all questions in relation to the tax arising under the provisions of this act," and when the court has heard and determined the matter, its order or judgment has the qualities of other orders or judgments, and is conclusive, subject only to be reviewed on appeal. That an appeal may be taken from such order was decided in *Cross* v. *Superior Court*, 2 Cal. App. 342, [83 Pac. 815] ; and that the state, through the district attorney or attorney general, may avail itself of the appeal we do not doubt, since the state is an interested party. Whether the question presented by counsel may still be reached by appeal from the order fixing the amount of the tax, or from the order settling the final account or from the decree of distribution when entered, is not for us to say.

Section 11 of the act of 1905 requires the administrator or executor to pay to the county treasurer all money coming into his hands as tax on property, and it is made the duty of the treasurer to give the administrator or executor duplicate receipts for such payment, "one of which receipts said executor . . . shall immediately send to the controller of the state, whose duty it shall be to charge the treasurer so receiving the tax with the amount thereof, and said controller

shall seal said receipt with the seal of his office, and countersign the same, and return it to the executor, . . . whereupon it shall be a proper voucher in the settlement of his accounts.''

The law contemplates the payment of the tax by any legatee or heir of the amount due from him, so that he may presently come into possession of his legacy or inheritance, and the receipt attesting its payment should be countersigned by the controller, and should be allowed in the executor's account. In other words, the law does not require that all the taxes from all beneficiaries should be paid at one time and the payment represented in one receipt, as is the case here.

But this section of the statute confers no judicial discretion upon the controller by which he may exercise the right to refuse to countersign a receipt as therein directed. Nor is there any other provision by which any revisory power is given to the controller in the matter of fixing the amount of the tax or determining whether the court has rightly fixed it. In countersigning the receipt he decides nothing, nor should the receipt be so framed as to bind the state or conclude its right to have the question reviewed on appeal should the state desire to appeal from the action of the court. The receipt is, and should be, only for so much money on account of the tax. The objection requiring this officer to countersign the receipt is probably to give him a check upon the county treasurer and to aid in the settlement of the latter's accounts. Ample provisions are made in sections 17 and 18 for the collection of the tax, should there be failure in payment, but the duty is devolved upon the county treasurer and the district attorney; and by section 23 the county treasurer is given authority to appoint a special attorney ''who shall have all the authority conferred upon the district attorney by sections seventeen and eighteen.'' The controller is given no authority anywhere in the act beyond that already pointed out, and does not figure in any part of the machinery provided for the collection of the tax or its enforcement.

The question as to whether the homestead, family allowance, expenses of administration and debts of decedent—either or all—should be excluded from the value of the estate and the balance only made the subject of the tax, is much argued in the briefs. The question is one of construction of the statute, and has never been decided by our supreme

court. The decisions in other states, influenced, no doubt, by divergencies in the statutes themselves, are not harmonious, some holding that only the exemptions enumerated in the statute should be deducted; others holding that debts, but not the other items, should be exempt, and still others that all the above items should be exempt. There is likewise some disagreement as to whether the rents, issues and profits should be taken into account and the state given a tax upon accumulations. There is also a question as to what point of time should be taken for the valuation of the estate—whether at the death of decedent, at which time the right of the state is vested, under our law, or at the time of the appraisement. All these questions may arise in the proceedings now pending in the probate court, and as the appeal in all probate proceedings is to the supreme court and not to this court, we deem it best to express no opinion upon them.

Our conclusion is that the controller should countersign and affix his seal to a receipt showing a payment to the county treasurer of $282.50, on account of inheritance tax in the matter of said estate bearing date October 7, 1907. Such is the effect of the receipt shown in the petition.

Let the writ issue.

Hart, J., and Burnett, J., concurred.